6wh146,
178    87

[PHILADELPHIA, JANUARY 16, 1841.]


CHURCHMAN *against* SMITH.


IN ERROR.


1. A book of entries, manifestly erased and altered in a material point, cannot be considered as entitled to go to the jury as a book of original entries, and ought to be rejected by the court, unless the party offering it gives an explanation which does away with the presumption arising from its face.

2. What circumstances will constitute a partnership as respects third persons.


ERROR to the Common Pleas of Delaware County, to remove the record of an action on the case brought by Peter Smith against Robert Churchman and Jonathan Roberts.

The plaintiff declared in assumpsit for goods, &c. sold and delivered to the defendants, as co-partners in trade, under the firm of Jonathan Roberts. The defendants pleaded non assumpsit, and payment, with leave, &c.

The cause came on for trial before BELL, (President) on the 27th of August, 1839, when the plaintiff offered in evidence his book of original entries, containing certain charges against the defendants, accompanied with the testimony of witnesses in respect to the handwriting in the book, and the delivery of the goods. The book was admitted in evidence, after objection on the part of the defendants; and exception was taken.

A great deal of testimony was also given in respect to an alleged partnership between the defendants, which it is not material to state here.

The learned judge charged the jury, in substance, as follows:

" This is an action of assumpsit to recover the value of certain powder alleged to have been sold and delivered by the plaintiff, Peter Smith, to the defendants, Robert Churchman and Jonathan Roberts. The defendants say the powder was not sold to them; and unless, under the evidence, you should be of opinion that such sale was made to the defendants jointly, the plaintiff cannot recover in this suit; because whatever may be the justice of the claim against one of the defendants, unless it extends to and embraces the other, he does not make out the allegation of his declaration, which asserts a contract made with both. In order, however, to create such joint liability, it is not incumbent on the plaintiff to show a contract expressly made with both defendants or a delivery to both; for joint liability may exist, although the arrangement for the sale and delivery of the articles was made with and to but one of the defendants; if they stood in a relation, which, in law, constitutes one the agent of the other, as to all subjects within the object of their association; in other words, if, at the time of the sale and delivery of the powder in question, the defendants were copartners in the prosecution of a business which required the use of powder, and such powder was purchased by one, even without the knowledge or assent of the other, both will be bound as fully as if the contract of purchase and sale were made by and with both. This, then, is the great question in the cause. Were the defendants in the years 1831, '32, and '33, co-partners for the purpose of quarrying and making profit of the stone of the Christiana quarry? If they were, and you believe the plaintiff's book of original entries, and the other evidence of the delivery of the article sold, the plaintiff is entitled to recover. If they were not partners, but, as is contended by Churchman, stood in the relation of landlord and tenant, the plaintiff is not entitled to your verdict. In order to determine this question correctly, it is important to ascertain what constitutes partnership, what are some of its characteristics, and how, in the absence of written evidence, the fact of its existence is usually ascertained. Partnership is a contract by which two or more persons join in common, money, goods, labour and services, for carrying on some lawful commerce, work or business, that they may share among them all the gain or loss thereby arising. So it may also be constituted by joining real estate owned by one, with money or labour, or both, contributed by another, if the object be to carry on a lawful commerce or business with the view to share the loss or gain. Thus, an agreement that one shall provide a shop, loom, and tackle, the other to perform the labour, and to share the profit and loss between them, constitutes a partnership. 2 *Watts*, 342. So if one agree to render service in a store as clerk, to be compensated by a participation of profits, he is a partner as regards creditors. 6 *Serg. & Rawle*, 259. The leading characteristic of

(Churchman *v.* Smith.)

partnership is participation in profit and loss: if such participation exist, no matter what is the nature or amount of the property or thing contributed by the persons associated, the law intends a partnership, attended by all the consequences of such relation.  Before I proceed to consider the usual proof of such a connection, it may be profitable to inform you as to some general principles which govern the liabilities of partners.  (Here the court pointed out the difference between ostensible and dormant partners, the extent and continuation of their liabilities respectively, and the general authority of one partner to bind his fellows by contracts in respect to the business of the firm.) Let us now inquire how partnership may be proved where the contract is not in writing.   Where suit is brought against partners, less evidence of the existence of partnership is required than where the action is brought by persons as partners.   In the former case, it is sufficient to make it out *prima facie* by proof of such facts as reasonably induce a belief: in the latter, proof more conclusive is required; and the reason is, that in the one instance the plaintiff cannot be supposed to have the means of making himself acquainted with all the-evidence of·the defendants' connection; in the other, such evidence must be within the knowledge of the plaintiffs.  Where, therefore, the partners are defendants, proof of the acts, conduct, and declarations of the respective partners in conducting the business of the firm is usually relied on to establish *prima facie* partnership, Whether such acts, conduct and declarations, be sufficient in themselves for that purpose is purely a question of fact for the determination of the jury.  It is sufficient for me to instruct you that such proof is competent, and from it the jury may legitimately deduce the fact.  Declarations, however, by one partner that others were connected with him, are not sufficient, standing alone, to charge such others as partners, but such declarations may be considered in connection with the acts and declarations of the others, tending in any degree to show partnership.  Briefly, declarations or confessions of one, independently of other facts, are not evidence against another: taken in connection with other declarations and acts, proceeding from such others, they are evidence.  On the other hand, the conduct of the alleged partners, in relation to the business of the alleged partnership, may properly be considered by the jury in disaffirmance of the allegation of partnership.  (Here the court stated the facts of the case.)   But apart from all the other facts of the case, we are to consider the effect of Mr. Churchman's declarations made to Messrs. Maddock and M'Cormick in 1831 and '32, and the declarations of his counsel before the arbitrators,· and here, that by the arrangements of the parties Mr. Churchman was to receive one-half of the profits or proceeds.  I have already said, and the position is not disputed by the defendants' counsel, that a participant·in the profit and loss of a concern, no matter what may be the arrangement between the parties, is as to third persons a partner, and as such liable

(Churchman v. Smith.)

for the debts of the firm. But it is said there must be a participation in the losses as well as the profits to make a partnership. This is true; but the very idea of profit includes the idea of loss; for profit is that which remains after losses are paid. It is not necessary to show that any losses were actually sustained. If the party from the nature of the arrangement was liable to suffer loss, the rule is satisfied. Now by the arrangement between Messrs. Roberts & Churchman, what was it the latter was entitled to receive? This is exclusively for your decision; but it is submitted that the evidence tends to prove that Mr. Churchman was to receive one half of the profits remaining after payment of losses. In 1832 he said he had netted in 1831, $1200. In 1833 he said they, Roberts and himself, had each netted $1200; thus putting himself on the same footing with Roberts. The word "netted" means, among business men, the sum realised after payment of all losses. It seems to me, therefore, that it is not correct to say that Mr. Churchman was to receive a moiety of the gross proceeds as compensation for the use of his quarry. On this point of the case a distinction exists of which it is proper you should be instructed; it is this: If a man stipulates that as a reward for his labour, or perhaps as a compensation for the use of his property, he shall have, not a specific interest in the business, but, a given sum of money, even in proportion to a given quantum of the profits, that will not make him a partner; but if he agrees for a part of the profits, *as such*, he is as to third persons a partner. In illustration of this distinction the following case is given. If the proprietor of a lighter agree with the person who worked the lighter, that in consideration of working her, the latter should receive one half of the gross earnings for his labour, it is ruled that such agreement does not constitute a partnership, it being merely a mode of paying wages for labour; but if the agreement be that the two were to share the profits arising from the working of the lighter, such agreement would constitute partnership.

But it is further alleged that the relation of landlord and tenant existed between these defendants, and that the amount receivable by Mr. Churchman is to be considered as rent. If such relation did exist, the defendants cannot be made liable as partners. There is no proof that in 1831 and '32, rent was to be paid by Roberts to Churchman. But although no such proof exists, it is insisted that the mode in which Roberts occupied the quarry was analogous to a renting of a farm on shares. I confess I can see no resemblance between the two cases. That a man may rent his land on shares, as it is called, without becoming a partner with his tenant, does not admit of doubt; and while the owner of the land keeps himself within the practice which governs such a letting, he is safe from the consequences of partnership; that is, while the landlord is content to receive from the tenant any portion of the gross produce of the farm, such return is to be considered as rent; but the moment he becomes

(Churchman v. Smith.)

a party to a contract, founded on a communion of profit and loss, arising out of the sale in gross of the produce of the land, each party to receive a portion of the profits and to bear a portion of the loss, he puts himself in the position of partner in respect to the subject from which profit is to be made or loss incurred. This does not interfere with the undoubted right of the landlord to authorise the tenant to convert into money his proportion of the proceeds : in such case the tenant is the mere agent of the landlord. In the instance before us, if the contract between Roberts and Churchman was that Mr. Churchman was to be paid for the use of the quarry, by a certain portion of the stone raised, or even by a certain sum in proportion to the stone quarried, or the value thereof, Mr. Churchman cannot be held as a partner, and the plaintiff is not entitled to recover. But if the agreement was, that after payment of losses and expenses, the profits were to be divided between Roberts and Churchman indefinitely, then, as to third persons, they are to be considered as partners, in respect to the business of the quarry at Christiana, and as such liable to the payment of all debts contracted in carrying on the business of the quarry. It does not appear, except from some statements made by Mr. Churchman, as to the renting in 1833, but that the parties carried on the quarry in this last year upon the understanding and agreement of the prior years. Be this as it may, if a partnership existed in 1831 and '32, or at any time during those years, while the plaintiff furnished the powder, which was afterwards dissolved, it is incumbent on the defendants to prove notice of such dissolution to the plaintiff. No such notice is alleged, and consequently the defendants, if they were *partners in 1831 or '32*, are liable for powder delivered by the plaintiff in 1833. Although the book of original entries was admitted in evidence to the jury, yet if you think the book was fraudulently added to or altered, with a view to charge Churchman, you ought to throw it altogether aside ; and in such case you should found your verdict upon such testimony as *is* to be found in the case, independently of the book. A book of original entries is evidence of goods sold and delivered : the jury are not bound by the prices set down in the book ; but it is *prima facie* evidence of price. The receipts of August 24th, 1832, and May 23d, 1833, though in full, are open to explanation, and cannot have the effect of barring the plaintiff. In the absence of explanation, the receipts will bar the plaintiff's recovery in this action."

The defendants' counsel excepted to the charge, and the cause was removed this court ; and numerous errors were assigned both in respect to the admission of evidence and the charge of the court.

Mr. S. F. *Reed* for the plaintiffs in error, cited *Rodman* v. *Hoopes*, (1 *Dall.* 85.)     *Prevost* v. *Gratz*, (1 *Peters C. C. Rep.* 369.)     *Curren* v. *Crawford*, (4 *Serg. & Rawle*, 6.)     *Marshal* v. *Gougler*, (10 *Serg.*

(Churchman *v.* Smith.)

*&c.* *Rawle,* 168.)  *Babb* v. *Clemson,* (10 *Serg. & Rawle,* 424.)  *Vicary* v. *Moore,* (2 *Watts,* 451.)  *Fairchild* v. *Dennison,* (3 *Watts,* 260.)

Mr. *Sterigere* and Mr. *Edwards,* contra, cited *Gow on Partnership,* 5, 14, *&c. Purviance* v. *M'Clentee,* (6 *Serg. & Rawle,* 259.) *Gregg* v. *Halfmoon,* (2 *Watts,* 342.)  *Heffelfinger* v. *Shutz,* (16 *Serg. & Rawle,* 44.) *Vance* v. *Faires,* (2 *Dall.* 217 ; *S. C.* 1 *Yeates,* 321.) *Ingraham* v. *Bockius,* (9 *Serg. & Rawle,* 285.)  *Sterret* v. *Bull,* (1 *Binn.* 234.)  *Jones* v. *Long,* (3 *Watts,* 325.)  *Waugh* v. *Carver,* (2 *Hen. Blackst,* 235 ; 1 *Smith's Leading Cases,* 491, and the note thereto.)

Mr. *Dallas* replied.

The opinion of the court was delivered by

Sergeant, J.—The errors in this case have been needlessly multiplied and subdivided into a great variety of heads, calculated rather to·confuse and perplex the case than to aid the investigation of it.  On the argument here they have been very properly reduced to a few points, which embrace all that is material.

Books of entry, supported by the oath of the plaintiff himself, are a peculiar species of evidence, not now admitted by the English law, but introduced into usage in this country at an early period, either from the necessity of the case, as we find it stated in our books, or in analogy to the civil law, by which a man's own books of account, with the suppletory oath of the merchant, amounts to full proof. The provisions of the civil law on this subject are explained in 3 *Bl. Com.* 368 and 370 ; and the statute 7 *Jac.* 1, c. 12, in its preamble and enactments, shows that at one time in England, books of entries were evidence at common law.  This statute confines this species of proof to transactions that have happened within one year before action brought, unless between merchant and tradesman in the usual intercourse of trade.  It was decided by Holt, C. J., notwithstanding this statute that a shop book was not evidence of itself within the year.  *Pitman* v. *Maddox,* (*Salk.* 690.)

But whatever may be the origin of the practice here, it has become firmly fixed and settled, as a general rule, that books of entries are evidence to prove goods sold and delivered, or work done.  It has, however, always been kept by the courts within prescribed bounds, and various modifications and restrictions imposed, to guard against the abuses which the *ex parte* acts of a person interested might otherwise lead to.  Of these the courts have themselves been the judges before they would permit the book to go to a jury, and they have considered it as a species of evidence which ought not to be extended beyond its ancient limits, and that a strict hand is to be kept over it.  *Thompson* v. *M'Kelvy,* (13 *Serg. & Rawle,* 127.)  In that case, scraps of paper, containing some scribbling or figuring on

them, besides the account of sales of the goods, were rejected. So, where they are not made at or near the time of the transaction, they are inadmissible. *Curren* v. *Crawford*, (4 *Serg. & Rawle*, 5.) They are not admissible to show a collateral fact. *Juniata Bank* v. *Brown*, (5 *Serg. & Rawle*, 226.) These and various other regulations have, from time to time, as the points occured, been adjudged as necessary to keep this sort of evidence within reasonable bounds.

In the case before us, the plaintiff's book of entries has been shown to us on the argument here, and it is obvious that there has been an erasure and alteration of the account against the defendants, and that in a material part; and it is left upon the evidence wholly without explanation. The heading of the account, " Roberts & Co. Dr." seems clearly to have been written upon an erasure of some prior heading; and in another entry in the account of May 23d, 1833, the same thing occurs. The heading of the account is in this case very material; it concerns, indeed, the main point in issue, whether the defendants were in partnership. A book of entries, manifestly erased and altered in a material point, cannot be considered as entitled to go to the jury as a book of original entries, and ought to be rejected by the court, unless the plaintiff gives an explanation, which does away with the presumption which must exist on its face. To allow such a book to go to a jury would subject this sort of evidence to the danger of great abuse, and tempt dishonest men to commit frauds by altering books, so as to adapt them to circumstances; whereas, such book should be a faithful record of transactions as they occur, and be pure and free from suspicion on its face; or, if altered, some explanation should be required. There may be cases, undoubtedly, where the rule may operate severely; but, on the other hand, it is one which the safety of the community seems to us to require, and one which is necessary, to keep this species of evidence within its proper and accustomed limits. The other objections to the book do not seem to be supported by the evidence given. The only entries in the book relating to claims for which receipts were given by the carters, are proved by the plaintiff to have been the two which the court excepted. The other entries may consequently have been made from memoranda, by Reid, the clerk, who also acted as carter; and if after delivering the powder himself, he made entries in the book from his memoranda, the book would be evidence. It would also seem inferable from the evidence that these entries were made by Reid on his return home, which would be in season. This disposes of the first and second errors.

The third error is improperly assigned, there being no bill of exceptions.

The ninth, eleventh, and twelfth errors are to the charge of the court, and we think they are not sustained. It is hardly possible for any court to charge in such language as to comprehend every

(Churchman *v.* Smith.)

possible point of view in which the case might be put, or to notice
every exception to the general rules of the law. If the party wishes
an explicit answer in relation to any particular point, it ought to be
brought to the view of the court directly.

> Judgment reversed, and a *venire facias de
> novo* awarded.