## Cooper *versus* Altimus.

1. A judge is not required to give a legal definition of every term he employs in his charge.

2. The omission to charge where there is no prayer for specific instruction is not assignable for error.

3. Cooper wrote to Altimus, inquiring if he had staves to sell; Altimus answered, "if you would let me know how much you could give I could get 4000 or 5000." Cooper replied, "if they are rift staves, and good, I will give you $35 per M., delivered at the station." This was a conditional order or agreement to take the staves if of the quality and delivered as required.

October 28th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cambria county :* No. 46, to October and November Term 1869.

In the court below Nicholas Altimus brought an action of assumpsit against James R. Cooper, to September Term 1866, to recover the price of between 4000 and 5000 staves.

On the trial before Taylor, P. J., December 15th 1868, the plaintiff gave in evidence these letters :—

"Summerhill, September 18th 1865.

" Mr. N. Altimus.

"Dear Sir : I told Hurlinger when he came to your place I told

[Cooper v. Altimus.]

him to ask you if you had any staves to sell. Wish you would let me know. Some of your neighbors may have some to sell. Let me know and yours oblige.

"J. R. COOPER."

" Mr. James R. Cooper.

"Dear Sir: In answer to yours I have six or seven hundred staves, and I have been looking out to get some more for you, if you would let me know how much you could give per hundred, I could get four or five thousand with some .heading. They would be delivered at Nineveh station. They are all white oak. Let me know soon.          Yours,          "NICHOLAS ALTIMUS."

. "Summerhill, October 18th 1865.

" Mr. N. Altimus.

"Dear Sir: Received yours of the 13th in regard to staves. If they are rift staves, and good, I will give you $35 per thousand delivered at the station. Let me hear from you soon.

"J. R. COOPER."

David Altimus testified that he delivered at Nineveh station 4040 staves on the plaintiff's contract in November 1865, and that when he unloaded the last he sent word to the defendant that they were delivered; James Dill borrowed part of the staves and replaced them; he did not buy them. There was other evidence that the staves were delivered at Nineveh station; that they were white oak rift staves and considered good. There was evidence for the defendant that the staves were not fit for. market. On cross-examination, defendant's witnesses testified that he took them to where the staves were to examine them, but he did not say anything about having bought them.

James Dill gave testimony from which it might be inferred that the plaintiff sold the staves to him; he took 2000 of the staves, sent word to plaintiff to come and get his pay; plaintiff replied that he had sold them to Cooper, and witness returned 2000 staves in place of those he took.

The court charged :— * * *

" Now if. the plaintiff, after receiving this letter, and after what had taken place between them before, proceeded to deliver the staves immediately at the place designated, and of the description and quality specified, and at once informed Cooper, it was a compliance with the proposition, and a contract if they were so delivered for Cooper in pursuance of that proposition; even though he failed to tell Cooper beforehand that he was going to deliver them. The proposition was like an order, assent to which would be implied from the act of compliance with it, if the staves were delivered in pursuance of it, and of the description and quality specified." * * *

" If the staves were not delivered at the station for Mr. Cooper,

but for any one else, or with the view of making the best of them
there, and after an effort and a failure to dispose of them other-
wise, the plaintiff informed Mr. Cooper that they were there for,
him, it was not a contract. It would depend on whether they
were delivered, in pursuance of the proposition, for Mr. Cooper.
If they were delivered for himself, intending to make the best he
could of them by selling them to somebody else, and after failing
to do that, he gave notice, such delivery was not assent to the
proposition of Mr. Cooper, which is the first element in a contract;
and this transaction, moreover, lacked the consideration and
mutuality necessary to entitle it to that character." * *    " Now,
when put there, were the staves put there by the plaintiff for
Cooper, and was he induced to put them there by the proposition
of Cooper, and in compliance with it? If so, it was a contract,
and when put there and Cooper informed of it, he was bound if
the staves were of the character and quality specified in the pro-
position; while if they were not so delivered, it was not a contract
—the act of depositing the staves at Nineveh station, viewed with
the proposition, did not amount to a contract. You will judge.
The evidence is with you, and it is a question for you. It
must, appear from the evidence, we repeat, that there was in
all the parts of the transaction what amounts to a contract;
and if that is not shown, the plaintiff's action would here fail. If
a contract is shown, and you so find, then the next inquiry is,
were the staves of the description and quality contracted for? If
so, and he was notified, Mr. Cooper was bound to receive them,
although he was not there at the time to take charge of them. If
delivered at the place, and an article answering the express
description contained in the proposition, he would be bound,
according to the terms of the contract, to pay for them at the
price he offered. On the other hand, assuming that there was a
contract, one of the express terms of it was that the defendant
would take them 'if they were all rift staves and good;' and if
they were not 'rift staves and good,' he was not bound to receive
them if he had been there at the time, because this is an express
stipulation of the contract.

"If an article is delivered under a contract, and does not come
up to the description expressed in it, still, if the vendee receives
it, or if after notice he fails to let the vendor know that he de-
clines to receive it, and that he does not consider it a compliance
with the contract, or if he does anything to induce the vendor to
suppose that he makes no objection by which he sustains incon-
venience or loss, the vendee would be bound to pay, not the
stipulated price, if the article is not of the stipulated quality, but
its *value.*" *    *    *

"If the staves were not of a reasonably merchantable charac-
ter, answering the description of Cooper, although found to have

[Cooper *v.* Altimus.]

been delivered for him in compliance otherwise with his proposition, he was not bound to receive them and pay for them, unless he failed to give notice of his objections, or did or failed to do something by word or act to prevent Altimus from realizing what he might have done out of the staves, and by means of some fault in Cooper, in which respect he sustained loss.

"We are not informed what took place between the parties immediately after the alleged delivery of the staves, but shortly afterwards, from the disclosed conduct of Cooper, it might be fairly inferred that he was objecting to receive or take them. He did not take them away, was examining them soon afterwards, and in the early part of the summer, or about six months afterwards, this action was brought. You will inquire whether there is anything in this aspect of the case, if your conclusion should be that the staves were not of the description and quality that Cooper was bound to receive upon the terms of the contract, if there was a contract, which would still render him liable; whether the facts and the attitude of the parties, as disclosed here, show or do not show that from the time they were left at the station Cooper was refusing to receive them. There is nothing expressed directly upon this question. Any conclusion arrived at must be gathered or inferred from the conduct of the parties. If your conclusion should be that Cooper refused to receive them at the time—and that would seem to us to have been his attitude all the time afterwards—then he would not be bound to pay at all, if the staves were not such as he had bought; while, if he failed to give notice, or to apprise the plaintiff of his refusal in such case, or did anything which misled him upon that subject, then he would be bound, although the staves were not such as the plaintiff was bound to deliver, to pay their value, upon the principle of the cases cited; and you will determine all these questions of fact for yourselves, from the evidence."

The verdict was for the plaintiff for $118.25.

The defendant took a writ of error, and assigned for error that the court erred—

1. In submitting to the jury the existence of a *contract*, without defining to them what, as matter of law, would be a contract.

2. In charging the jury that this case should be assimilated to that of an "order."

3. In submitting to the jury the inquiry whether, by any act or conduct of Mr. Cooper, the plaintiff Mr. Altimus had sustained loss, when there was no evidence on that subject at all.

*A. Kopelin,* with whom was *W. Kittell,* for plaintiff in error.

*R. L. Johnson,* for defendant in error, cited Frankenfield *v.* Freyman, 1 Harris 56; Dailey *v.* Green, 3 Id. 118.

[Cooper *v.* Altimus.]

The opinion of the court was delivered, May 5th 1870, by

SHARSWOOD, J.—The 1st assignment of error is, that the court erred in submitting to the jury the existence of a contract without defining to them what as matter of law would be a contract. This specification is contrary to Rule VII., 6 Harris 578. A judge, however, is not required to give a legal definition of every term he employs in his charge. It may be assumed that men know that a contract means an agreement between two or more persons. If there is anything in the evidence falling short of this, it is the duty of the party to frame a point containing a request for instructions, and present it to the court. That an omission to charge where there is no prayer for specific directions is not assignable for error, is well settled: Churchman *v.* Smith, 6 Whart. 146, and many other cases down to Burkholder *v.* Stahl, 8 P. F. Smith 371.

The 2d specification is, that the court erred in charging the jury that the proposition was like an order—assent to which would be implied from the act of compliance with it if the staves were delivered in pursuance of it and of the description and quality specified. The proposition here referred to evidently was that contained in a letter by the defendant to the plaintiff in evidence, dated October 18th 1865. This letter must be read in connection with the previous correspondence between the parties. Cooper had written to Altimus to know if he had any staves to sell, or could procure any from his neighbors. To this Altimus had replied, "If you let me know how much you could give per hundred I could get four or five thousand, with some heading." To which the letter or proposition of October 18th 1865 responds, "If they are rift staves and good, I will give you $35 per thousand, delivered at the station." Now, this certainly was a conditional order, or agreement to take the staves if of the required quality, and delivered at the station. Altimus might safely act upon it, and if he sent the staves to the station, Cooper could not refuse, after notice to receive them there, without showing that his order had not been complied with, or an unreasonable time had elapsed. There was no error, therefore, in the charge in this respect.

The 3d assignment is, that the court erred in submitting to the jury whether by any act or conduct of Mr. Cooper, the plaintiff Mr. Altimus had sustained loss, when there was no evidence on that subject at all. This specification is also contrary to Rule VII. There is the more reason to insist upon the enforcement of the rule in this case, because, upon an examination of the charge, it does not appear that any such question was distinctly submitted to the jury, nor was it necessary. In stating the rule as to the obligation of the vendee if he objects to receive an article to give notice to the vendor—and that—upon his neglect that he would be bound to pay, he adds, " by which he sustains inconvenience or loss," and a similar expression occurs in another part of the charge.

[Cooper v. Altimus.]

It is hypercriticism to complain of language of this character. If the defendant thought that the law was upon the facts that Altimus could not recover without showing that he had sustained loss by the refusal of Cooper to receive the staves, and that no evidence had been given of such loss, he should have requested the court in writing so to instruct the jury.

Judgment affirmed.