## Kemmerer v. Troxel

*Emanuel H. Klein,* for plaintiff.
*C. William Freed, Jr.,* for defendant.

BIESTER, J., April 14, 1952.—This matter comes before us as the result of defendant's motion for a new trial after the return of a verdict in favor of plaintiff.

Defendant assigns alleged errors on the part of the trial judge in connection with rulings as to the admission of certain evidence presented on behalf of plaintiff and the rejection of certain evidence which defendant attempted to introduce.

In order to comprehend the situation it is imperative that we set forth the nature of the case and the type of testimony upon which plaintiff relied.

Plaintiff, as of the period during which this action accrued, was engaged in the butchering business with a place of business in the Village of Steinsburg, Bucks County. Defendant, during the same period, was a butcher with a place of business at Allentown, Lehigh County.

Plaintiff had begun doing business with defendant in about 1940. Defendant would periodically call at

the slaughter house of plaintiff and select the meat that he desired. Having made the selection, he would prepare two slips of paper upon which were recorded the kind and weight of the meat which defendant had purchased. One of these slips he kept for his own records and the other was left with plaintiff. Shortly thereafter plaintiff prepared a type of sales slip, or invoice, fixing the unit price of the meat and the total of the purchase price. These slips were retained by plaintiff in a book he kept for that purpose. Every 4, 5 or 6 weeks he would call upon defendant, at which time the parties compared their records, both as to the purchase price of the meat delivered and the credits to be given defendant as a result of payments made between settlements. All payments were made in the form of cash, enclosed in a sealed envelope and, in the ordinary course of business, procured by plaintiff upon his various interim visits to defendant's store. These payments, if we accept plaintiff's testimony, were applied to the then earliest unpaid item of the running account.

At the time suit was brought, plaintiff contended that the items delivered to defendant from April 5, 1950, to February 8, 1951, had not been paid. The total of such items was $4,641.50. This was the amount upon which suit was brought. The jury returned a verdict in favor of plaintiff for the full amount with interest.

Defendant admitted that plaintiff had sold and delivered to him merchandise during the same period and in the same amount, and for the same prices, but alleged that he was not indebted to plaintiff, but that, on the contrary, he had paid for each delivery regularly and periodically in the form of cash. The problem is, therefore, peculiarly one of fact, depending upon the credibility of the witnesses, and the court so charged.

The focal point of defendant's attack is the admission by the court of certain records kept by plaintiff. It was plaintiff's testimony that prior to the checking, or settlement of the accounts, of the parties, plaintiff would enter the totals he obtained from the sales book on what was referred to as a statement book. It was this book which he would take with him when he visited defendant for the purpose of adjusting their accounts. At such times plaintiff would customarily deliver to defendant the original of the invoices plaintiff had prepared, setting forth the purchases made subsequent to the last settlement between the parties, retaining in his possession a copy thereof. Defendant kept his own separate records and the two would sit down and examine the records for the purpose of determining whether they were in accord. Since defendant admits the delivery of the meat as set forth in plaintiff's exhibit attached to the complaint and does not quarrel with the prices charged therefor, the point at issue became the question as to whether plaintiff had allowed defendant credits for all of the amounts which he had paid.

When the parties met together for the purpose of adjusting their records and accounts, plaintiff would take with him the envelopes in which payments had been received since the last checking date, after having noted thereon the date of payment and extracted the cash. From the information contained on the envelope, the amount originally contained therein having been noted by defendant at the time of payment, from the invoices, from the statement book of plaintiff, and the records of defendant, the parties would proceed to adjust their differences, if any. Plaintiff, within the sight of defendant, would mark his statement book beside the item which represented the last bill which had been paid. This was done by writing the word "paid" beside such an item or, on occasion,

by means of a heavy line under the item, which plaintiff testified had the same effect. If the money received during the intervening period resulted in a balance due after allowing the credit, a notation of the balance was made to the right of the entry.

That this was a careless and unbusinesslike manner of conducting their financial transactions cannot be disputed. However, although we do not condone the method used by plaintiff in keeping his records, the system was evidently acceptable to defendant, who, except as to detail, agreed that this was the method employed. Not only did he accede to the method, but made payments in cash rather than by check, received no receipts, and kept no records of payments made.

It is the contention of defendant that, since this was a suit on an open book account, plaintiff's case should have been established by self-sustaining books of original entry, both as to debits and credits; that the books admitted did not conform to the legal requirements of such books, and were, therefore, inadmissible. His attack is particularly directed to the inability of plaintiff to illustrate from his records the allowance for cash payments. He apparently takes the position that, since this was a suit on an open book account, the only method of proof which plaintiff might employ would be the introduction into evidence of the books themselves, and that such books must be self-sustaining, without regard to the method which obtained in the particular case. He, however, does not dispute the books of original entry, insofar as delivery and prices are concerned, but, on the contrary, agrees, in effect, that the goods for which defendant was charged and the unit prices thereof were in accord with the records of defendant.

It appears to the court that defendant has taken the same erroneous position as did defendant in the

case of Vondersmith v. Kloidt, 143 Pa. Superior Ct. 170, wherein the court said, at page 173:

"If defendant's position were to be sustained, it would mean that when a book account is sued upon and items in it are disputed, a plaintiff would not be permitted to sustain those charges by any other proofs. It is apparent that the appellant confuses rules relating to pleadings with rules of evidence."

The statement books were admitted into evidence as corroborating the testimony of plaintiff as to the method employed by the parties in connection with their adjustment of the records and allowance of payment. They were not admitted as books of original entry and the rules relating to the admission of such records have no application under the circumstances.

This is not a situation where a bookkeeper, or one unacquainted with the circumstances surrounding the transaction, offers self-sustaining records. On the contrary, the records were kept by plaintiff himself and the entries therein were made by plaintiff himself. Although the entries relative to the sale and delivery of the merchandise and the prices charged thereon were obtained for the purpose of the statement book from other books of original entry and, in effect, posted to the statement book itself, these figures are not in dispute. The central point of the controversy, as we have heretofore said, is the allowance of the credits. Such credits for allowances for payment and the method employed in recording the credits had the tacit approval of defendant.

"Books of account, whether admissible as books of original entries or not, are competent to refresh the memory of a witness who has personal knowledge of the transactions, or to corroborate his testimony": Henry's Pa. Trial Evidence, par. 104, and cases cited therein.

Since the admission of this record was corroborative of plaintiff's testimony and gave the jury a better understanding of the facts, we believe it was properly admitted: Haughney v. Gannon et al., 274 Pa. 443; Pickrell v. Lititz Shoe Co., 48 Lanc. 445.

Because of the peculiar situation that obtained the task assigned the jury to determine the facts was not a simple one. If, however, we had refused to admit the record, the task would have been immeasurably more difficult. We may call attention to the fact that we admitted the records of defendant also to assist the jury in the determination of the issues.

Upon a careful examination of the law we conclude that the statement book might not only have been admitted for the purpose indicated by the trial judge, but might also have been admitted as being in the nature of an admission on the part of defendant.

"Entries in the books of account of one party may be received as admissions of the adverse party where their correctness has been assented to by the latter, as for example where the entries were made by such party, where they were made and read in his presence without objection on his part, or where they have been used by the parties as the basis of settlement of their accounts ": 22 C. J. 891; 32 C. J. S. 584; Darlington v. Taylor, 3 Grant 195; Coe v. Hutton, 1 S. & R. 398; Commonwealth v. Grotzner, 125 Pa. Superior Ct. 305, 308.

If the statement books had been admitted in evidence on the theory of being a tacit admission of the proper allowance of credits, their theory of admission would have been more unfavorable to defendant than the theory upon which they were admitted. This being so, and their admission having been justified on this additional ground, we fail to see how defendant can complain.

It is the further contention of defendant that, although we admitted additional statement books for years prior to the most recent statement book, we did not limit their purpose of admission.

The whole record indicates that these books were admitted for the same purpose as the later records. When counsel for plaintiff offered the books he stated that they were introduced as "just showing the system." The objection made by defendant's counsel was to the effect that these records were too remote. Since his objection was specific any other objection that he may have had to their admission was waived. The court deemed the admission of these records as being proper by reason of the fact that a running account was involved and that there might be some inquiry into the records prior to the time that arrearages upon which suit was brought came into being.

Under the circumstances we do not regard these records as being too remote. On the contrary, they further substantiated the testimony of plaintiff as to the method employed by the parties.

Defendant also contends that the court erred in refusing to admit upon offer of proof testimony of a witness called by defendant who would have testified, according to the offer, that she overheard a telephone conversation between plaintiff and his son to the effect that certain delivery slips involving another customer had been lost, but that the son could make up the figures by reason of his having been able to recall the items involved. Such testimony was not in reference to the transactions between plaintiff and the defendant, but involved another customer.

We sustained the objection on the ground that the evidence was too remote and peculiar to one instance, to show general bookkeeping methods. In doing so we inferentially agreed with defendant's position that he might have assailed the general character of plaintiff's

books, but that the method of which he sought to avail himself was improper.

We agree that where books of original entries supported by oath are offered in evidence, the adverse party may show their general character by proving the charges and entries against other parties are false or fraudulent. Funk v. Ely et al., 45 Pa. 444. In the instant case, however, we do not regard the offer of defendant as being a permissible attack upon the general bookkeeping method of plaintiff.

Although we have grave doubt as to the propriety of assailing the character of the record by the proof of one false entry, in the present case, defendant's offer failed to prove that any false entry whatever was made. To permit testimony that there was one error in bookkeeping as to any account to be sufficient evidence from which a jury might infer that the books of entry were unreliable would be a dangerous position. If we permitted evidence that there may have been an individual error in another account it would, we think, have constituted error.

In addition we may point out that plaintiff was not relying on the shop book rule to establish his cause of action; that there was no attack upon any of the items with which defendant was charged; that the son may, in fact, have been able to recall accurately the items of charge referred to; that the father may not have acceded to the method suggested by the son; that, subsequent to the loss of the slips, plaintiff may have conferred with his debtor and have agreed upon the proper amount to be charged.

For these reasons we find no merit whatever in this assignment of error.

In consonance with the foregoing we make the following order:

Now, to wit, April 14, 1952, the assignments of error are dismissed and a new trial refused.