## BURNS *v.* SUTHERLAND.

In a question of the validity of a parol gift, accompanied by possession and improvements, if there be any evidence of the contract, the location and quantity of the land, possession taken pursuant to the contract, and improvements made, the jury are to determine whether these facts are sufficiently established; and though proved by evidence of admissions, the judge can do no more than caution the jury of the danger of relying on such proof.

If the evidence prove the location and quantity of the land with sufficient precision to enable the jury to determine them, so as to direct how a surveyor may run it off from the residue of the tract, the boundaries are sufficiently certain in the case of a parol sale, or gift.

It is not error to omit an explanation of the law bearing on the case, unless instructions are prayed.

In error from the Common Pleas of Washington.

*Oct.* 29. Trespass. The plaintiffs were executors of George Sutherland, having an estate under his will. The defendants were heirs of Alexander Sutherland, a son of George, who it was alleged had received the land under a parol gift, and made improvements. By his will, testator, after making provision for some of the children of his son Alexander, declared that if the heirs of Alexander should bring ejectment or otherwise recover fifty acres of land their father had settled on in his lifetime, and should actually gain that by law of his real estate, then the heirs of Alexander should be cut off with one dollar. The defendants, who, since the death of testator, had entered on the land, called many witnesses to prove the gift. E. L. had heard testator, a few days after he raised his log-house, say : that if Alexander would go on and finish off this house, as he had agreed, he would give him fifty acres of land ; and after testator had got into his house, he said : Alexander had finished off the house in good style, and he had given him fifty acres of land, and that Alexander had built himself a house and shop upon it. There was no designation of boundaries then mentioned, further than that the land was on the ridge next the blockhouse, and lay on the road between witness's father's factories and Potter's mill. The time of these conversations did not appear from the paper book. The witness further stated that Alexander had been living on these fifty acres four or five years prior to 1823, when witness left the country. J. F. stated there was a strip of woods between the land Alexander lived on, and the land of testator ; and she proved testator's declaration that the mother of one of defendants might move a house on the land to a particular spot, for that was defendant's land, and he would help her to move it. S. C. proved that prior to 1814,

testator told his son Alexander to direct witness where to cut wood on the disputed tract, as he was going to give him the land. Between 1814 and 1818, testator informed witness he had given Alexander fifty acres there next the blockhouse, in that corner.

John Daley testified that about 1821–2, Alexander applied to him to help raise a shop ; part of the foundation was laid. Testator came there, and told Alexander he would put the shop on the other side of the road; they disputed, and testator said : you may put it where you please—the land is your own. Seven or eight years afterwards, testator, pointing to the land where Alexander lived, told witness he had given him fifty acres. Two years afterwards, he again told him he had given Alexander fifty acres of his land in the north-west corner of his farm, adjoining lands of McCoy and the blockhouse tract; that he did not think it prudent to give him a deed, as he had spent his wife's land; but he would leave it so that when he was called off, the heirs would get the land. It was also in evidence that Alexander had built a house, barn, and shop—such as were usual in that part of the country—and cleared part of the land, where he resided until his death, in 1836. His family moved off a few weeks afterwards. A surveyor who had laid off the land containing forty-nine acres, one hundred and thirty-eight perches, since testator's death, stated : It could not be taken off in any other way so as to include the buildings. The plaintiffs proved a lease between testator and defendants, after the death of Alexander, for the whole tract, and that from 1815 to 1836, the whole tract was assessed to testator. That in 1820 Alexander applied for the benefit of the insolvent laws, and made affidavit he had no property. The defendants showed that from 1810 to 1815, fifty acres were assessed to Alexander.

The two points submitted, which were assigned for error, were,

3. That defendants must show not only the gift, the possession taken in pursuance thereof, and valuable improvements, but the precise locality of the land claimed, and the particular boundaries thereof, so that the jury could direct, from the testimony before them, where the lines should run, and how the deed should be drawn. To this the court answered : This is true, but it does not mean that the jury must be able to fix the exact courses and distances of the lines, but must be able to fix the locality and boundaries so as to direct how a surveyor may run it off from the rest of the father's land.

6. That the defendants have failed, in law, in making out a valid parol title to the land in dispute.

Answer. We cannot say this—it depends upon facts of which

the jury must judge. But to enable the jury to find for the defendants, they must be satisfied that the defendants have made out clearly the facts necessary to bring their case within the principles of law applicable to parol sales or gifts.

These two points, and the want of an explanation of the law in relation to parol sales or gifts of land, were the errors assigned.

*Acheson*, for plaintiff in error.—The court should have explained the law to the jury relative to this point. [*Per Curiam.*—You did not ask instructions.] They were necessary, in reply to the 6th point: Wood v. Farmare, 10 Watts, 204; Robertson v. Robertson, 9 Watts, 42; Haslet v. Haslet, 6 Watts, 467; Wack v. Sorber, 2 Whart. 387. Indeed, the defendants were uncertain whether to claim by gift or sale. In cases of this nature, the court are more especially judges of the sufficiency of the evidence in point of law; it is in the nature of a proceeding in equity, and they must decide whether a case has been made out, if the jury believe the testimony. The testimony here neither established a gift nor a sale: Eckert v. Mace, 3 Penna. Rep. 364; Eckert v. Eckert, Ib. 360.

*McKennan*, contrâ.—There was no dispute below as to the law that was read from the authorities, and the judge was not bound to argue the case or repeat the substance of the authorities cited, unless requested. The course taken by Grier, J., though sanctioned by this court, is not obligatory. His rule, which is the most stringent, requires but reasonable certainty as to boundaries; and was not that the case here? The quantity, the part of the tract, and some of the very lines, were designated; surely no more could be asked, unless a survey is always necessary. We insist the evidence showed a gift, coupled with possession and improvements.

*Watson*, in reply.—Eckert v. Eckert shows that improvements are not sufficient to give title if they were compensated. What were they? A log house and shop, built from timber growing on the land; their want of value was shown from the fact that no evidence was attempted to be given on that subject.

*Dec.* 6. BELL, J.—The plaintiffs in error, by their sixth point, asked the court below to instruct the jury, "that the defendants had failed, in law, in making out a valid parol title to the land in dispute." This the court declined to do; but added, " to enable the jury to find for the defendants, they must be satisfied that the defendants have made out, clearly, the facts necessary to bring the

case within the principles of law applicable to parol sales or gifts."
It is, certainly, the duty of the party who invokes the aid of the
peculiar equity, administered in cases like the present, to establish,
by clear, precise, and satisfactory proof, every requisite to take the
particular transaction from without the operation of the statute of
frauds; and a failure to do so, in any essential point, will defeat
the alleged contract as a means of conveying lands.   When such a
failure occurs, it is the duty of the judge presiding at the trial of
the cause to instruct the jury, the party averring the oral sale had
not made out a case in which a chancellor would decree a specific
performance; Haslet v. Haslet, 6 Watts, 464; Robertson v. Ro-
bertson, 9 Watts, 42; Woods v. Farmare, 10 Watts, 203; but
though he ought to examine the case, so as to assist the jury in
estimating the nature, weight, and relevancy of the testimony, it
is not his province to decide questions of disputed facts, where any
evidence has been given proper for the consideration of that mem-
ber of the tribunal to which, in a common law court, are properly
referred litigated facts.   Admitting every thing to be true which
the proof tends to establish, it is for the court to say whether such
a case as would induce a chancellor to rescue it from the blighting
influence of the statute has been presented; but where any proof of
circumstances, proper and necessary for this purpose, has been
given, the value of it is to be determined by the jury, under the
admonition of the court, in regard to the equitable rules which
have been established to direct and govern the determination.   In
this, as in all similar cases, it was incumbent on the defendants to
show the alleged contract, and, clearly, what was the subject of it;
what was the consideration upon which it proceeded, and that pos-
session of the land in dispute had been delivered to and taken by
their ancestor, subsequent to and in pursuance of the contract.
But they were at liberty to make out these requisites by any mode
of legal proof, sufficient to produce a clear conviction of their ex-
istence in the mind of the inquirer.   Looking to the evidence in-
troduced by them on the trial of the cause, for this purpose, we
think the court below would have stepped over the line dividing its
province from that of the jury, had it adopted the suggestion ten-
dered by the plaintiffs' sixth point; for there was, certainly, proof,
if believed, of all the requisites I have adverted to as necessary to
establish a parol sale of lands.   Without attempting to recapitulate
it minutely, it will be sufficient to say that Elizabeth Laughlin tes-
tified to a conversation which occurred at her father's house, in the
year 1815, in which old George Sutherland stated, that if his son

Alexander would go on and finish the new-hewed log house, then in process of erection for the father, as the son had agreed to do, he, the father, would give Alexander fifty acres of land adjoining the blockhouse tract, on the road between the witness's father's house and Potter's mill. She, afterwards, heard George say he had got into his new house, which Alexander had finished off in first-rate style; that he had given Alexander fifty acres of land, and that Alexander had built himself a house and shop on it, and he hoped he would do well. This testimony, if true, establishes an agreement, founded upon a sufficient consideration, subsequently executed by performance of the consideration, by the son, and by a delivery of possession of the land by the father, in pursuance of the contract, followed by valuable improvements made thereon by the son. It is true this evidence is open to the remark repeated in Robertson *v.* Robertson, that the declarations of parties are the most unsatisfactory species of evidence, on account of the facility with which they may be fabricated, and the impossibility of contradicting them, to say nothing of mistakes or failure of recollection, which may totally alter the effect of the declarations. Still they are legal evidence for the consideration of a jury, to whom may be, properly, addressed the animadversions to which this kind of proof is obnoxious. But the testimony of Elizabeth Laughlin is strongly corroborated by other witnesses, and particularly by John Daley, who was called on to assist Alexander in raising a shop on the fifty acres. He says a dispute took place between the father and son, as to which side of the road the shop should be built on. It was terminated by the petulant exclamation of the father, that the son might place the shop where he pleased, as the land was his own. This was twenty-four or twenty-five years before the trial, and at that time the son had built himself a house upon the disputed tract. Seven or eight years after this, the father told the witness he had given Alexander fifty acres of land, pointing to where the son then lived. All the witnesses agree that the son took possession of this land, about the year 1815; that he cleared fifteen or twenty acres of it, built upon it a house, stable, and shop, such as were common in the neighbourhood; and that he continued to reside there until his death, in the year 1836, after which his widow and family lived upon it for some time. Now, though there is testimony in the cause tending to disprove the alleged agreement between the father and son, and its results, surely the learned president of the Common Pleas would not have been justified in taking the whole case from the jury, on the ground of failure of proof, as he was requested to

do by the plaintiffs.  But they further object, that the evidence does not ascertain, with sufficient precision, the locality of the tract claimed by the defendants; and the answer of the court to the third point submitted by the plaintiffs, on this subject, is assigned for error.  The rule, that you must show what was the subject of the contract, is unquestionable.  But to show this with reasonable certainty is sufficient.  It is not necessary that lines of separation should be actually run upon the ground, if from the agreement of the parties, and the distinct subsequent possession of the vendee, it is possible to ascertain the boundaries and quantity of the land sold; or, as was answered by the court in this instance, the proof must be such as to enable the jury to fix the locality and boundaries, so as to direct how a surveyor may run it off from the rest of the vendor's land.  The proof here seems to me to be ample for this purpose.  In addition to what was stated by Mrs. Laughlin on this point, John Daley testified, George Sutherland told him he had given his son fifty acres lying on the north-west corner of his farm, adjoining lands of John McCoy, and the blockhouse tract.  Barnabas Chase and William Sprouls assign to the disputed tract the same locality; and Thomas Frazier, a surveyor, pursuing this description, found no difficulty in running division lines, separating the fifty acres from the rest of the farm.  He says it could not be taken off in any other way so as to include the buildings.  Indeed, none of the witnesses examined on either side seem to have had any hesitancy in pointing to the particular position of the fifty acres, which, according to Jane Frazier, was separated from the possession of George, the father, by a strip of woods; and the father's last will speaks of them as fifty acres which Alexander had settled on in his lifetime.  There is, therefore, no error in the answer complained of.

The third error assigned avers the court failed to explain to the jury the law relating to parol sales and gifts of land.  But we see no sufficient grounds for this complaint.  Full answers were given to all the points submitted by plaintiffs, which embraced the principles they thought applicable to their case, and necessary to be brought to view in proceeding to its correct decision.  If the counsel conceived any further instruction was proper to enlighten the jury, they should have called the attention of the court to it, and specifically prayed the instruction desired, for it has been more than once ruled that want of direction not asked for will not be deemed error: McClure v. McClure, 1 Barr, 374; Churchman v. Smith, 6 Whart. 146.  In all cases much is left to the discretion

of the judge trying the cause, as to the extent of instruction required by the exigencies of the particular cause, where no particular direction is prayed for. It is impossible a court of error should know how the trial was conducted, or how much information was imparted to the jury, as to the principles which ought to govern it during its progress; and it may depend very much upon this how far the judge ought to elaborate his charge. In this very case, as we are informed, most of the decided cases having relation to the litigated subject were read to the jury, and fully commented on by the counsel, at the trial; and the court may, therefore, have correctly thought nothing further was required than answers to the points submitted. It is impossible for us to say in this there was error.

Judgment affirmed.