## The Catawissa Railroad Co. *versus* Armstrong.

1. In an action for damages for death occasioned by negligence, whether a
given state of facts constitutes negligence, is generally a question of law ;
but whether a particular negligence contributed to the catastrophe is a ques-
tion of fact.

2. Evidence was given of a conversation between the engineer of the train
and the deceased.  The court said to the jury " what passed between the
engineer and Armstrong we do not know," and in another part of the charge
read the testimony as to what passed, and expressly submitted all the evidence
to the jury.  *Held*, there was no error.

3. The court instructed the jury to put a value on the life of the deceased,
his probable gains and accumulations, to consider his age, his family and
usual wages, and award such an amount of damages as a careful and impartial
examination of the evidence seemed to demand.  *Held*, that the true grounds
for estimating damages were suggested and explained.

4. The obligation of a wife, whose husband has been killed by negligence,
to support herself and children, and the loss of her chance to be endowed out
of his future accumulations, are pecuniary injuries to her, to be redressed by
the person who caused them.

5. In such case there can be no fixed standard for their measurement, the
discretion of a jury properly instructed is the standard.

6. The value of a husband's life to his wife is determined by ascertaining
how much better in her pecuniary resources and prospects she would be with
him than without him.

ERROR to the Court of Common Pleas of *Lycoming county*.

[Catawissa Railroad Co. *v.* Armstrong.]

This was an action on the case by Margaret Armstrong against The Catawissa Railroad Company, for damages for the death of her husband, Michael Armstrong, which she alleged was occasioned by the negligence of the servants of the company.

By an arrangement with the Philadelphia and Erie Railroad Company, the Catawissa Company had a right to use the road of the former from Milton to Williamsport, but under its rules, two of which are: " Passenger trains must always be drawn, not pushed ; cases of accident, obstruction or unavoidable necessity only excepted, and then only to the nearest side track. In every such case, and in backing any train, the conductor or an experienced and trusty brakeman must be stationed on the top of the car, to signal, and in full view of the engineer. Where the track cannot be seen for half a mile, the speed must not exceed four miles per hour."

The first train rule is: ". No train must leave a station before its schedule time has expired, nor without a signal from the conductor. The bell and whistle must always be sounded before starting."

Armstrong was in the employ of the Philadelphia and Erie Company (under Mulligan as superintendent), as a labourer on the repairs of the track, on the above-mentioned portion of the road. On the night of November 26th 1862, a rail was broken north of Muncy Station. Armstrong and others, by Mulligan's direction, started on a hand-car down the road south from Muncy Station, to get help to repair the road, and hearing the Catawissa freight train coming up they took their hand-car from the track and signalled the train to stop, which it did about a mile from the station. Armstrong went to the train and told the engineer about the broken rail above Muncy ; but, in answer to the engineer's inquiry, told him that he could run to Muncy and do his work. The train went on to Muncy ; the men, expecting the train was on the siding, put the hand-car on the track and followed the train, for the purpose of going to the place of the broken rail ; as the hand-car was going it was struck by the freight train backing, and Armstrong was killed ; the disaster occurred about midnight, the night being dark. The evidence was that there were two lights on the front of the hand-car, that Armstrong stood facing the station, that there was a " dim" light on one side of the last car in the freight train, that there was no person on the rear end of the train, and that there was no signal by the bell. The evidence as to whether the train went back more than once, and also whether the whistle sounded, was conflicting.

The acts of negligence complained of were: that before the train backed no signal of an intention to do so was given, neither signal, whistle or bell ; that on the hindmost car there was no light, or if there was, it was too dim to be seen by persons who were

[Catawissa Railroad Co. v. Armstrong.]

approaching in the hand-car; that there was no one stationed on the top of the car, to signal the engineer.

There was a verdict for the plaintiff for $5791.

In charging the jury the court (Jordan, P. J.) read the evidence of the engineer, and charged, amongst other things, as set forth in the assignment of errors, viz.—

" 1. The train was flagged by direction of Mulligan. Armstrong went to the train after it stopped. *What passed between Armstrong and the engineer we do not know.*

" 2. The 3d point we answer, that if the jury believe that Armstrong approached the train in the manner disclosed by the evidence without looking for signals, or whether the train was on the siding, he was guilty of negligence; but whether such negligence contributed to his death or not is a fact for you to determine. If it did, plaintiff cannot recover.

" 3. If under the instruction you have received, and the evidence in the cause, all of which is submitted to you, you are of opinion Mrs. Armstrong is entitled to recover damages, you must fix the amount.   You must put a value upon the life of Michael Armstrong, his probable gains and accumulations, and award to his widow such an amount of damages as a careful and impartial examination of the evidence seems to demand.   The Supreme Court have said, and we say to you, that it would be wrong to limit the value of a man's life by his probable accumulations.   In estimating the amount of damages, it would be proper for you to consider the age of Michael Armstrong, at the time he was so suddenly killed.   He was probably about forty years of age, as stated by Martin Lynch, having a wife and six children to support.   He was a labouring man and enjoyed good health; was receiving at the time of his death 90 cents per day for his labour.   Since then wages have increased from 90 cents, $1.20, $1.40 and $1.70, and are now about $1.50.   How long he would have lived if this accident had not happened, we have no means of determining, and how long, if he had lived, his health would have been preserved, we cannot tell."

*G. White, J. W. Comly* and *H. C. Parsons*, for plaintiff in error, as to 1st error, cited Nieman *v.* Ward, 1 W. & S. 82; Keeler *v.* Vantuyle, 6 Barr 250.

The court should have affirmed the defendant's 3d point as matter of law: Pennsylvania Railroad Co. *v.* Ogier, 11 Casey 71; Little Schuylkill Navigation Co. *v.* Norton, 12 Harris 465.

As to the question of damages, they cited Pennsylvania Railroad Co. *v.* Kelly, 7 Casey 372; Same *v.* Zebe, 9 Id. 318; Same *v.* Ogier, 11 Id. 60; Same *v.* Vandever, 12 Id. 298; Same *v.* McCloskey, 11 Harris 526.

*J. Armstrong* and *W. H. Armstrong*, for defendant in error,

cited Pennsylvania Railroad Co. *v.* Henderson, 7 Wright 452; Same *v.* Ogier, 11 Casey 71; Same *v.* Kelly, 7 Id. 372; Same *v.* McCloskey, 11 Harris 526; Railroad *v.* Armstrong, 13 Wright 186; North Pennsylvania Railroad Co. *v.* Robinson, 8 Id. 179.

The opinion of the court was delivered, May 15th 1866, by

WOODWARD, C. J.—The 1st error is assigned upon that part of the charge in which the learned judge, in reciting a portion of the evidence, said: "*What passed between Armstrong and the engineer we do not know.*" Knecht was the engineer, and in his testimony, which was upon the judge's notes, he says that when he came within a mile of Muncy he got flagged by a white light as a signal to stop; that he stopped and waited till the man came up, and then detailed a conversation he had with "the man" about the cause of the detention. It is argued, and with apparent propriety, that Armstrong was "the man" who went and conversed with Knecht, though there were several others on the hand-car with him (Mulligan, Collins and Lynch), and the signal to stop was given by order of Mulligan. The judge apparently forgot to connect the conversation had by Knecht with the fact that Armstrong went to the train after it stopped, though this fact is not conclusive evidence that Knecht's conversation was with Armstrong instead of one of the other three men. But grant the blunder, of what consequence was it? Two or three times the judge referred the whole evidence to the jury, and it appears from the charge that he read Knecht's testimony in full; so that if Knecht did indeed prove what passed between him and Armstrong, the jury had it fairly placed before them, and could not possibly be misled by the judge's erroneous comment. It was not an instance of misstated testimony, still less of suppressed testimony, but was at most an inaccurate comment on a piece of comparatively very unimportant evidence, furnishing at the same time to the jury the surest means of correcting the mistake.

Such a mistake, with the means of instant correction at hand, is no ground for reversing the judgment. If we would make it a ground, the effect would be ultimately to suppress all judicial comment on testimony, and thus deprive juries of the valuable assistance they are accustomed to look for from the bench.

The 2d error assigns the answer that was given to the defendant's 3d point. The court affirmed the doctrine of the point in respect to Armstrong's negligence, but said it was a question of fact for the jury whether such negligence contributed to his death. This is the part of the answer that is complained of. The point was that, "If the jury believed that Armstrong approached the train in the manner disclosed in the evidence, without looking for signal or whether the train was on the siding, *he was guilty of such negligence as contributed to his own death,*

[Catawissa Railroad Co. *v.* Armstrong.]

and the plaintiff cannot recover." What acts and conduct con stitute negligence, or rather, whether a given state of facts con- stitutes negligence, is generally a question of law, and was in this case so declared by the judge. But whether a particular negligence contributed to the catastrophe under investigation must, from the nature of the injury, be treated as a question of fact, and when counsel insisted upon such a deduction being made, they ought not to complain that the court referred it to the jury to make it. If they could not persuade the jury to make the deduction, it was not the court's fault.

Whether the facts in proof constituted any negligence on the part of Armstrong, might very reasonably be doubted in view of what was said of them by my brother Thompson when this case was here last year, but the plaintiff in error has nothing to com- plain of in the court's judgment of these facts on the last trial. As an abstract proposition the negligence was affirmed, and the jury was permitted to find whether it contributed to the accident. This disposition of the point was as favourable to the company as they had any right to expect.

The only remaining assignment of error relates to the instruc- tion given on the measure of damages. The action was brought by a wife for the killing of her husband, and the jury were instructed to put a value upon his life, and in doing this, to have regard to his probable gains and accumulations, his age, his health, his usual wages and the family he had to support. We have said that in this class of actions all that can be sought or recovered is pecuniary indemnity for a pecuniary loss, and we think nothing else was submitted to the jury in this instance. The value of a husband's life in a wife's action at law for damages for killing him means the pecuniary value; how much better in her pecuniary resources and prospects would she be with him than without him. The obligation to support herself and the children is transferred by his death from him to her, and her chance to be endowed out of his future accumulations is destroyed; and these are pecuniary injuries to her, and deserve redress at the hands of the party who caused them. In the nature of things there can be no fixed standard for their admea- surement; the discretion of a jury properly instructed and directed is the standard. When such questions have been committed to juries without instructions that pointed them to the right elements of an estimate, we have reversed judgments; but when, as here, the true grounds of estimate are suggested and explained, the judge has done his whole duty, except to see that extravagant verdicts, if rendered, be not sustained.

The judgment is affirmed.