## Burkholder et al. versus Stahl et al.

</div>

1. Error cannot be assigned of what was not said by the judge below, without a request so to charge. This should never be transgressed except in very flagrant omissions, plainly operating positively to mislead the jury.

2. When the assignment is on the charge, in answering or refusing or omitting to answer a point, it should embrace the point in the same manner as it is required to embrace the bill of exception when the error is to the rejection or admission of evidence.

3. Proceedings in a court of error assimilate themselves to those in courts of original jurisdiction. The writ of error in a general way recites the cause of complaint, and it is left to the assignments of error to specify it as a declaration does the cause of action.

4. The assignment must be complete in itself; that is, self-sustaining.

5. Process to correct errors is the institution of a species of action in which there are pleadings.

| | |
|---|---|
| 58 | 371 |
| 151 | 255 |
| 152 | 612 |

| | |
|---|---|
| 58 | 371 |
| 22 SC | 1305 |

| | |
|---|---|
| 58 | 371 |
| f 210 | 1445 |

| | |
|---|---|
| 58 | 371 |
| f214 | 1331 |

| | |
|---|---|
| 58 | 371 |
| f 36 SC | 1388 |

[Burkholder *v.* Stahl.]

6. Good faith to the court should prevent any assignment of error, without a conscientious belief that it is an error.

7. The principle decided in an authority cited, the names of the parties to the cases cited, and the *page of the book where the case begins*, should be stated.

8. Dates should be scrupulously given, and proofs of paper-books corrected.

9. The observance of the rules of the Supreme Court will be steadily insisted on.

May 12th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Somerset county:* to May Term 1869. No. 76.

This was an action of trespass *q. c. f.*, brought May 18th 1867, by Henry H. Stahl and others against Moses Burkholder and others.

This case being one in which the Supreme Court has interpreted and enforced its rules (6 Harris 578) in reference to the assignment of errors, &c., without discussing the merits it has been thought proper to report it here out of its chronological and local order.

For the same reason a statement of the facts is unnecessary.

The defendants submitted the following points:

1. If the jury believe, from the evidence, that Moses Burkholder was the bonâ fide purchaser of the land on which the alleged trespass was committed, and that he was *in possession* of the land in pursuance of his purchase, the plaintiffs cannot recover.

2. If the jury believe that the sale by Benjamin Bittner to the plaintiffs was made in bad faith, and in fraud of the rights of the defendant, the plaintiffs cannot recover.

3. If the jury believe that Moses Burkholder was the purchaser of the land as mentioned in the 1st point, and plaintiffs knew of said purchase, the defendants acquired such an equitable estate in said land, as could not be defeated by the subsequent sale to plaintiffs, and therefore they cannot recover.

4. If the jury believe that the plaintiffs made their purchase with full legal notice of the previous sale to Burkholder, then their title must be considered as held in trust for Burkholder, and they cannot recover.

5. If the jury believe, from the evidence, that Bittner and Burkholder *never met and agreed* by parol, to rescind the articles of agreement between them, the mere declaration of either party, in the absence of the other, will not amount, in law, to a rescission of the written contract, and plaintiffs cannot recover.

6. Where articles are made for the sale of land, they cannot be rescinded by parol, until the contract of rescission be established by clear and unequivocal proof, definite and clear in all its terms.

7. Where the vendee, under articles, is in possession of the land sold, no parol rescission is valid, unless the articles are cancelled,

[Burkholder *v.* Stahl.]

or peaceable possession be given by the vendee to the vendor, and the money paid, refunded.

8. When the plaintiffs heard from Bittner, that Burkholder talked of throwing up the contract, it was incumbent on them to inform Burkholder what Bittner told them, and that they intended to purchase the land from Bittner, but failing to do so, they cannot recover.

King, P. J., after some preliminary remarks, charged:—

"The first question to be considered, therefore, is, was the contract of 4th September 1866, rescinded by the mutual consent of the parties ?

"The only direct evidence to this point is contained in the testimony of Benjamin G. and Charles Bittner, sons of the vendor."

(The judge then recapitulated the testimony of these witnesses.)

"This, as we have already stated, is the only evidence that can be regarded as direct upon the question of a rescission of the contract by the consent of the parties. * * This evidence is therefore submitted to you as bearing upon the question of the rescission; yet it is our duty, at the same time, to say that before you will give to it the effect claimed, you must be fully persuaded that Burkholder agreed that the contract should be annulled, that he authorized his wishes to be communicated to Bittner, and that Bittner at once assented. For if Bittner did not at once assent, Burkholder would have the right to change his mind, and recall his proposition to rescind. The rescission of a contract by mutual consent requires the assent of both parties just as much as any other agreement.

"If, as the result of a careful examination of this branch of the case, you reach the conclusion that there was no rescission of the contract by the consent of both parties, you must then turn your attention to the second question proposed, namely: Was there such a failure of performance, on the part of Burkholder, as justified him in regarding the contract as rescinded ?

"When one party to a contract fails to perform his covenants, the other may, undoubtedly, choose to consider the contract as at an end, under certain limitations. Generally no contract can be rescinded by one of the parties unless both can be restored to the condition in which they were before, or at the time the contract was made. Again, if one of the parties has derived any advantage from a partial performance by the other, he cannot hold on to such advantage and consider the contract as annulled, because of the new performance of other covenants named in the agreement. In such case the law will require him to comply with his agreements, and seek redress for injuries he sustains, at law or equity. These restrictions upon the rights of Benjamin Bittner to rescind the contract, are applicable to, and are to be considered by you, in this case.

[Burkholder *v.* Stahl.]

" What new performance is alleged ?

" The articles of agreement required Burkholder to pay, at the time of the execution thereof, the sum of $200. He paid but $99. This latter sum, however, was accepted by Bittner, who made no objections that the balance was not paid. From what transpired at the time, as testified by .Alexander Philson, Esq., you have the right to infer that Bittner was satisfied to wait a reasonable time for the balance of the hand-money. Bittner afterwards demanded payment of this balance, and Burkholder refused to pay it, alleging that Bittner had broken the agreement by taking rails and keelers from the land. We have no hesitation in ruling that such a non-compliance under the circumstances of this case, would not justify the vendor in considering the agreement as rescinded. Before he could do so, he was required, at the least, to notify Burkholder of his intention to regard the contract as at an end, unless he paid the money demanded. The money was first demanded in November, and afterwards in February or March. About the last of February or first of March, this balance of $101 was tendered to Bittner, who refused to accept it.

\*        \*        \*        \*        \*        \*        \*        \*        \*

" The propositions contained in the first four points of the defendants are correct, and are therefore affirmed.

" We affirm the 5th point with this qualification. If the sons of Bittner were authorized by their father to have interviews with Burkholder, and so informed him, his declarations in regard to the rescission of the contract are evidence, as much as if they had been made in the presence of Bittner, but they must be viewed in connection with the other facts in the cause, bearing upon that question.

" The law is accurately stated in the 6th point.

" We are not prepared to affirm the 7th point, to the extent required.

" We believe we have already fully answered the last point of defendants in the general charge."

The verdict was for the plaintiffs for 50 cents damages.

The defendants moved for a new trial; the motion was overruled. They then took out a writ of error, and assigned for error that the court erred :—

1. In submitting the case to the jury to be decided by them as a question of fact, when it was a pure question of law arising on the facts proven.

2. In telling the jury that the testimony of Benjamin G. Bittner and Charles Bittner was *direct evidence of the rescission of the contract by the mutual consent of the parties.*

3. In not telling the jury that the evidence of Charles Bittner showed positively that there had been no rescission of the contract previous to the sale made to the plaintiffs.

[Burkholder v. Stahl.]

4. In not telling the jury that the evidence was not sufficient, *in law*, to rescind the contract, and that the plaintiffs could not recover.

5. In their charge on the 5th point submitted by defendants.

6. In refusing to affirm defendants' 7th point.

7. In failing to answer defendants' 8th point fully.

8. In failing to lay before the jury, fully and clearly, the general law of the case arising upon the several points of defendants.

9. In refusing to grant a new trial to defendants.

*J. Hughes* (with whom were *W. H. Postlethwaite* and *J. O. Kimmell*), for plaintiffs in error.

*M. H. Koontz*, for defendants in error, insisted that the assignments of error were null for want of compliance with the rules of court.

The opinion of the court was delivered, July 6th 1869, by

THOMPSON, C. J.—The defendants in error in effect demur to the pleadings in this writ of error, for want of conformity to the rules of court providing for the assignment of errors: 6 Harris 578; and claim that they are not bound to notice them, on the authority of the last clause of Rule 8, which says, "any assignment of error not according to this and the last rule will be held the same as none." These rules require that in assigning errors to the charge of the judge, they are to be *in totidem verbis*, and that when "to the admission or rejection of testimony the specification must quote the full substance of the bill of exceptions, or copy of the bill in immediate connection with the specification."

The objections thus made to the several assignments of error in this case, call upon us to interpret and enforce the rules thus invoked. If they deserve, for anything which has been flagrantly neglected, to be visited with a disregard of the assignments themselves, it is a fault not to be charged to the rules, but to a neglect of conformity to their requirements. In Thompson v. McConnell, 1 Grant 396, the rules were enforced upon similar objections, and the profession were notified, "*that hereafter errors not assigned as required by the rules to be found in the appendix to 6th Harris, will be held the same as no assignments at all.*" So in Daniel v. Daniel, 11 Harris 198, and in Bull's Appeal, 12 Id. 286. Thus has timely warning been given that the rules of practice established by this court will be insisted on. We repeat that warning again, with a very full determination to enforce the subjects of them. That we have not always enforced the rules, has resulted from a reluctance to see injustice done if it might result therefrom, rather than from any disposition to relax them, as experience has shown they are not only a great convenience, but a ne-

[Burkholder *v.* Stahl.]

cessity, in the increase of business thrown upon this court by the increasing population and wealth of the country. We will now proceed to ascertain whether the objections made to the assignments of error in this case are well founded or otherwise.

The objection to the 1st, 3d and 4th assignments is that they specify error on part of the court in NOT charging the jury in a particular way, although it appears no request was made so to charge.

This is rather a question of practice than of express rule, but it is so well established in numerous reported decisions, and in the daily administration of the law of the court, that error cannot be assigned of what was NOT said by the judge merely, and it is as much a fault to assign such errors as if expressly prohibited by rules in the most explicit terms. A few of the latest authorities on the point will be found in 6 Wright 143 and 493, and 5 P. F. Smith 407. This rule ought never to be transgressed excepting in very flagrant omissions of the court, plainly operating positively to mislead the jury.

The 2d assignment of error is also a wide departure from the rule requiring the portion of the charge claimed to be error to be quoted in *hæc verba*. The portion quoted here is not in *hæc verba*, nor substantially correct. It is therefore within Rule 7th, 6 Harris *supra*, and not to be specially noticed.

The 5th assignment is also deficient; the point, the subject of the exception, is not embraced in it. When the assignment of error is upon an exception to the charge in answering, or refusing, or omitting to answer a point, the assignment of the error should embrace the point in the same manner as it is required to embrace the bill of exception when the error is to the rejection or admission of evidence. The assignment of error should be substantially thus: "The court erred in answering (or in refusing or omitting to answer, as the case may be), the first point of the plaintiff or defendant, which point is as follows, to wit:" Here the point should appear in full, with the answer, if any. That is wholly omitted in this assignment, and also the 6th and 7th assignments of error. They are all in the same category, and are not entitled to be noticed severally.

If there were no rules on the subject at all, it seems to me it would occur to the learned professors of the law, that this would be necessary in order to constitute a good assignment of error. Proceedings in a court of error very closely assimilate themselves to proceedings in courts of original jurisdiction. As in the latter, the appropriate writ for the commencement of an action only states in a general way the cause of action or complaint, leaving it to be more specifically set out in the *narr.*; so in the former, the writ in a very general way recites that, "as it is said, manifest error hath intervened, to the great damage of the said plaintiff in error,"

[Burkholder *v.* Stahl.]

the command to the judges in the court below, is to send up the "record, process and all things touching the same," "that being inspected, we may further cause to be done, what of right, and according to our laws and customs ought." Although this writ is to the judges, yet it is to be served on the adverse party notifying him to appear, &c. The cause of complaint is thus very general, and it is left to the assignments of error to specify the cause of complaint, as a *narr.* does the cause of action in other courts. When that is done, and errors are assigned, the defendant's plea is *in nullo est erratum.* The case in error is then at issue.

Like a *narr.*, therefore, the assignment of error must be complete in itself: that is, self-sustaining. Whatever is part of it must be parcel of it. If the error be in answering a point, the point must be in the assignment of error in order to see what the error is. It would be a very defective *narr.*, it will be admitted, in replevin, simply to state that the defendant had taken the plaintiff's goods, without stating what goods; or in slander, to say that the defendant had spoken defamatory words of the plaintiff, without giving the words; or in a suit on a note or bond, stating the indebtedness to be by note or bond, without setting out the instrument or giving the substance; the writ does this only, and it is left to the *narr.* to do more. Neither of these instances would be a greater departure from that logical precision required in the law, than in charging that a court erred in their answer to a point without stating the point. Let it always be remembered, that process to correct errors is the institution of a species of action, in which there are pleadings, and the mind will readily recur to the necessity of furnishing such pleadings in a complete and intelligent form. It is often, I am persuaded, the want of a recurrence to this, that produces the neglect of that which ought to assimilate the proceedings in error to proceedings in courts of original jurisdiction.

It is sometimes said, it is burdensome to reprint the points in a case in the assignments of error, when they are required to be set forth elsewhere in the paper-book. The same might be said of *narrs.* in the cases referred to; but the answer is twofold; whatever is worth doing is worth doing well; and what the law requires to be done is necessary to be done. I will grant that where points are unnecessarily numerous the complaint is not always groundless. But long practice at the bar and on the bench, has satisfied me, that it is a rare case where more than three or four, or at most a half a dozen, of points are necessary, in order to direct the attention of the court to the special views of counsel in any case. Points are the judicial operation of counsel's mind, and if made only on this conviction, or firm belief that they are the law, they will be few. If made to entrap, or without a conscientious conviction or firm belief that they present the law

[*Burkholder v.* Stahl.]

of the case, it is in my judgment, a violation of the moral ethics which the professional obligation is designed to inculcate. And just here I may be pardoned for saying, that these remarks are especially applicable to assignments of error. Good faith to the court should ever prevent any assignment of error, without a conscientious belief that it is an error. I will not quote the professional abjuration of all species of falsehood in representations of any kind to the court, for I am well persuaded that its violation is never intended; but it is not possible to avoid inquiring, when assignments of error in a case amount, as they often do, to one, two or three dozen, whether the counsel think that many errors exist in the case, or ever existed in any case, tried by a sane judge. It is often applied to remarks about the number of assignments of error, that counsel cannot tell where the error is, or what the court may think is error. Let the advocate exercise the functions of a judge before setting forth his complaints of error—reflect; call to his aid his learning; and after having thus exercised his mind to the best of his ability, assign his errors. If they are numerous after that, they will justify him, by their seeming merit, at least; but it will be a very rare case if they exceed a half dozen at any time. These remarks, it will be observed, are general, and have no special reference to the very case in hand, although they have to the matter discussed above, viz.: the presentation of cases to this court.

The 8th assignment of error is to the effect that the court erred in failing to lay before the jury fully and clearly the general law of the case arising on the several points of defendants. This assignment directly contravenes Rule 6th, 6 Harris *supra*, which forbids the having more than one point in one specification of error. This is a complaint of error in the answers to all the points. General errors are never regarded. So is this assignment in violation of the rule which requires the portion of the charge complained of to be set forth *in totidem verbis*, as well as of Rule 5th of the old rules, that counsel must specify in writing the particular errors he assigns.

The 9th and last assignment of error, that the court erred in refusing a new trial, must be regarded as an oversight of the learned counsel in the case. They failed to remember that the refusal of a new trial is not the subject of error in this court. The motion is an appeal to the discretion of the court below, which is not reviewable here.

While on this subject, which embraces somewhat the practice in preparing cases for due presentation in this court, it may not be entirely amiss to go a little beyond the points raised in objection to the presentation in this case, and notice a matter not complained of here, but which we often feel the inconvenience of, namely: the citation of books without any reference to the prin-

[Burkholder *v.* Stahl.]

ciples which it is claimed they establish. This directly contravenes Rule 10th, 6 Harris 578. "A naked reference to the book," says the rule, "will not be sufficient." The penalty for the violation of this rule, as well as any other, may be found in rule 17th: To the plaintiff in error a nonsuit, to the defendant in error his paper-book will not be received. The reason of the Rule is to enable the judges at once, without resort to the books themselves, which is not possible during the argument, to see what bearing the principle is to have on the case, or whether or not it supports the position contended for, and if so, whether it will affect the general result of the case. No rule is more important than this, and while it is generally observed, still it is too often neglected.

So, in citing reports, the names of the parties and the *page of the book where the case begins*, should be carefully and accurately given, and not the page merely where the principle cited is to be found. Dates should be scrupulously given. Errors in this particular are often embarrassing, as, in writing opinions, the judges often cannot have the records before them to refer to. Remissness in correcting the proofs of paper-books is also very often a noticeable feature in some practitioners. First impressions of slovenly work are never very favorable to the party presenting it, and this ought to be sedulously guarded against. If nothing else, a decent respect for the court ought to cause reasonable care in this particular.

Rules are very important aids in the trial of cases, and no less so in reviewing these trials; and unless they are enforced, it would be better there were none. It is therefore in no spirit of captiousness that we insist upon their observance, and will most steadily do so in the future; they are one and all essential to the despatch of the greatly-increasing business of this court.

Were we apprehensive of wrong to the plaintiff in error in making a final disposition of this case, we would do no more than non pros. the writ, so that the party, if he chose, might sue out another; but we have looked into the charge of the learned judge with a view to what might be proper to be done, and having satisfied ourselves that there is no just ground of complaint in regard to anything which occurred in the trial, so far as the court was concerned, we think that the judgment ought to be affirmed, and further strife ended in the case.

Judgment affirmed.