# Hockenberry *v.* New Castle Electric Company, Appellant.

*Negligence—Electric companies—Lineman—Death—Proximate cause—Contributory negligence—Case for jury—Damages—failure to charge on present worth—Erroneous instructions.*

1. In an action of trespass for the death of plaintiff's husband, a lineman in the employ of a telephone company, who while at work on a telephone pole came in contact with a defectively insulated wire of an electric company and fell to the ground and was found dead, where it appeared that the defective insulation of defendant's wire had existed for a time sufficient to charge defendant with constructive notice thereof, it was for the jury to determine whether the negligence of the defendant was the proximate cause of decedent's death; it was not material that it did not appear whether the death was caused by the electric shock or by the fall induced by the shock.

2. Where, in such case, it appeared that deceased had not worn rubber gloves or a safety belt, but where the only evidence to show that deceased's hand had received the shock was the testimony of an expert, who stated that he had found a burn upon decedent's hand, which might have been caused by a heavily charged electric wire, it was for the jury to determine whether the negligence of deceased in failing to wear gloves contributed to the accident, and whether his life could have been saved had he worn a safety belt.

3. The omission of the court in a negligence case to instruct the jury to find the present worth of future earnings, even when not requested so to do, is material error. When such omission occurs, the charge is not simply inadequate, but positively misleading.

4. Where in such case, the trial judge charged the jury that "the wife of deceased, if entitled to recover, would be entitled to such sum as would compensate her for the loss of support, maintenance, care, protection and association of her husband......what she would have received during the years that the two of them would have probably lived......in the way of support and maintenance" without qualifying such instructions by requiring the jury to find the present worth of the payments which the wife would have received, a judgment on the verdict for plaintiff should be reversed.

Fedorawicz v. Citizens' Electric Illuminating Co., 246 Pa. 141, distinguished.

Mr. Justice MOSCHZISKER dissents.

Argued Oct. 5, 1915. Appeal, No. 227, Oct. T., 1915, by New Castle Electric Company, from judgment of C. P. Lawrence Co., March T., 1914, No. 90, on verdict for plaintiff, in case of Hazel Hockenberry v. New Castle Electric Company, and Union Telephone Company. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for the death of plaintiff's husband. Before PORTER, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $9,700, and judgment thereon. New Castle Electric Company appealed.

*Errors assigned* were in refusing to direct a verdict for defendant, in refusing to enter judgment for defendant n. o. v., rulings on evidence and instructions to the jury.

*C. H. Akens,* of *Akens, Wilkison, Lockhart & Chambers,* for appellant.

*Robert K. Aiken,* with him *Frank A. Hover,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 3, 1916:

The plaintiff's husband was a lineman in the employ of the Union Telephone Company. This company maintained its wires on a series of poles in the City of New Castle, one of which had for a number of years been subjected to a certain extent to a joint use with the New Castle Electric Company, which latter company also maintained a system of poles of its own. The joint use of this particular pole gave rise to the conditions under which the accident here complained of happened. Immediately along side this pole the electric company maintained a pole of its own, at a distance of not more than a foot at the base from the pole of the telephone company. At an elevation of about 32 feet from the

ground two high voltage electric wires of the electric company were attached to the cross-arm on the pole of the telephone company, one to the cross-arm on the south side of the pole, the other to the same cross-arm on the north side, each about 15 inches from the pole. The can and distributing bracket for telephone uses were on the pole some 30 inches above the electric wires. The plaintiff's husband, pursuant to directions from his employer, on the 16th July, 1913, ascended this pole for the purpose of reestablishing a telephone connection with a certain dwelling along the line. The connection could only be made at the can and distributing bracket. While so engaged he was seen to fall through the branches of the trees which stood adjoining, and when he reached the ground he was found to be lifeless. In the statement of the cause of action it is charged that while engaged at his proper work and in a proper way upon this pole, without negligence on his part, he came in contact with a wire or wires of the electric company which were heavily charged with electricity and defectively insulated, and because of this latter circumstance the electric current passed through his body resulting in his death. The trial resulted in a verdict for the plaintiff, and from the judgment entered thereon the electric company has taken this appeal.

It is true the evidence does not definitely disclose what was the immediate cause of the death, whether it was the violence of the fall, or whether death followed at once upon the electric shock and caused the fall. This is immaterial. If he received the electric shock, the cause of death was sufficiently explained. Whether he did or did not, was a question of fact for the jury. The evidence that he did was not so conclusive as to exclude all other theories; nevertheless, a careful examination of it has satisfied us that it afforded ample basis for the inference derived by the jury. It would have been error to rule otherwise. With the electric shock once determined upon by the jury as the proximate cause of

death, the question regarding the defendant's negligence was next for consideration. The defective insulation of the defendant company's wire carrying a high voltage, in the immediate neighborhood in which the employee was at work, was conceded. There was evidence that this condition had existed for a considerable time, sufficiently long to give constructive notice to the defendant. If the accident occurred by electric shock, the evidence would warrant no other inference than that it was received by contact of some part of the employee's person with this uninsulated wire. The question was properly referred to the jury.

Did any negligence on part of the employee contribute to the accident? This was the third question submitted to the jury, and which appellant contends should have been decided by the court as matter of law. The alleged contributory negligence consisted in the failure of the employee to use rubber gloves and wear a safety belt. In repeated cases we have held that failure on the part of an experienced lineman to use these means of safety, when engaged in such hazardous work as was this employee, is to be imputed as negligence; but all these decisions are predicated on the established or conceded fact that the accident resulted in consequence of such failure. The argument for the appellant assumes that the point of contact with the uninsulated wire in this case was the employee's hand. This was neither conceded nor established with that degree of certainty that took the question from the jury. The only testimony on the point was that of the expert who examined the body shortly after the accident. This witness gave as his opinion that the cause of death was an electric discharge, and he stated the indications found upon the body which led to this belief, among others a burn on the right hand about three-quarters of an inch long and of the width of a lead pencil. Describing this burn he said "it was a charred condition of the skin,—hardening of the skin." This was followed by the question, "Could you tell from its ap-

pearance what caused that burn in his right hand?"
His answer was "No." Later on in his testimony, upon
cross-examination, he said he could not tell how recently
the burn had been received, except that it was his judg-
ment that it had been received within twenty-four or
thirty hours preceding the death. Then followed these
questions and answers: "You could not tell, or could
you, if this burn had been caused by coming in contact
with a high voltage wire that it had any effect on the
person—it was not serious enough in character to give
any indication of that, was it?" A. "You mean that
scar—the appearance of the scar was not great enough?"
Q. "Yes, to indicate that it had been occasioned by the
hand coming in contact with a high voltage electric
wire? This mark on the hand didn't indicate that the
part had come in contact with a wire carrying sufficient
current to kill a person did it?" A. "I have never seen
any other mark on a person killed by coming in contact
with electric wire, so that I could not answer that ques-
tion." Q. "You could not give any opinion on that
then?" A. "No, sir." Certainly it was for the jury to
determine the weight to be allowed this testimony. No
matter that the employee failed in his duty in not wear-
ing rubber gloves; except as such failure contributed to
the accident it would be immaterial. Whether it con-
tributed or not depended on whether the condition of the
hand, as described by the expert, was a convincing in-
dication that it was through the hand that the dead man
received the electric shock. This question the jury
alone could decide. And so with respect to the em-
ployee's failure to wear a safety belt. If that was negli-
gence, it would involve with another question and de-
pended on it for solution: when did the man meet his
death? instantly upon his receiving the shock? or,
upon striking the earth in his fall? If the former, a
safety belt might have avoided the fall of a lifeless body,
but nothing more. In conceding these to be debatable

questions and for the jury alone to decide, the trial court gave the appellant all the advantage it was entitled to.

Up to this point we see no error in the record. The remaining question relates to the instruction of the court with respect to the measure of damages. In his charge to the jury the learned trial judge gave the following instruction: "The wife of the deceased, if entitled to recover, would be entitled to such sum as would compensate her for the loss of support, maintenance, care, protection and association of her husband. Now it is not the whole of his wages that she would be entitled to by any means, it is what she would have received during the years that the two of them would probably live. What she would have received from him in the way of support and maintenance." The portion of the charge we omit in no wise corrects or qualifies the error here committed. What the wife would have received out of the wages of her husband was, of course, an element tc be considered and determined, but only as a basis for capitalization in a sum which would represent present value. She could have received a share in the wages only as the wages were earned; the verdict would be for a demand presently payable, the exact equivalent of the anticipated sum. We have repeatedly held that failure on part of the court to instruct the jury in such cases to find the present worth of future payments which were to be anticipated and capitalized in the verdict, even where no special request for such instructions had been made is reversible error. We need refer only to Wilkinson v. North East Boro., 215 Pa. 486; Reitler v. Penna. R. R. Co., 238 Pa. 1; Burns v. Penna. R. R. Co., 219 Pa. 225, and the most recent case, Mack v. Pittsburgh Rys. Co., 247 Pa. 598. These cases all hold that omission by the court in such cases to instruct the jury to find the present worth of future earnings, even when not requested so to do, is material error, on the ground that when such omission occurs the charge is not simply inadequate, but positively misleading. There are cases, such as Connor

v. Electric Company, 173 Pa. 602, where such omission was complained of and reversal of the judgment did not follow; but in such cases the instructions given by the court were found to be adequate in themselves as to the correct measure of damages, and it was held to be the duty of the, party, when this occurs, if more specific instructions are desired, to present to the court points embodying the instructions desired.

We have not overlooked the fact that in Fedorawicz v. Citizen's Electric Illuminating Co., 246 Pa. 141, where a like point was raised we declined to apply the rule here stated. We rested our decision there on the fact that nothing in the result reached by the jury indicated any departure from the settled rule requiring the capitalization of future earnings. We were all of one mind, in view of the verdict rendered, that the omission by the court to instruct the jury on this branch of the case was without prejudice to the defendant, and for this reason we refused to reverse. The case was so exceptional on its facts, that it is not to be regarded as a precedent justifying failure on part of the trial court to instruct the jury how to properly estimate the value of future earnings in cases of this general character.

The authorities cited above are conclusive of the question involved, and compel a reversal of the judgment in this case. The assignment complaining of error in the particular last referred to is sustained; the others are overruled. Judgment reversed and a venire facias de novo awarded.

DISSENTING OPINION BY MR. JUSTICE MOSCHZISKER:

The plaintiff's husband was killed on July 16, 1913, when 32 years of age; he was a strong, healthy, hard working man, in regular employment, with an earning capacity of from $65.00 to $85.00 a month, in addition to which he kept up a small farm, upon which he and his family lived. He left surviving his widow, who was 23 years old, and an eight-months-old child. The verdict,

in favor of the plaintiff, was for $9,700.00. We are
unanimous in the opinion that there is no merit in any
of the assignments of error save one, and on this one
alone the majority have decided to reverse the judgment
in favor of the plaintiff. Since I feel strongly that there
is no reversible error in the case, I am moved to place
my views upon record.

The point upon which I differ with the majority of the
court concerns the instructions given by the trial judge
to the jury on the measure of damages; he said: "Now
it is not the whole of his wages that she (the plaintiff)
would be entitled to by any means, it is what she would
have received during the years that the two of them
would probably live—what she would receive from him
in the way of support and maintenance." It is conceded
that this instruction is correct so far as it goes; but the
majority feel that, although at the end of his charge the
trial judge asked counsel if they desired him to call at-
tention to anything he might have omitted, and no re-
quest was made for further instructions on the measure
of damages, yet, the omission to tell the jury they must
reduce the damages to their present worth was reversible
error. To sustain this view four cases are relied upon,
which we shall briefly consider, in an endeavor to show
that in each of them there was present error in addition
to the mere inadequacy here complained of. In Wilkin-
son v. North East Boro., 215 Pa. 486, 492, the instruc-
tions on the measure of damages were, "In arriving at
the amount, you will find what her earning power was
prior to the accident, and deduct from that her earning
power since the accident, and then take the period of
time she will be deprived of her earning power and com-
pute it accordingly." These instructions not only failed
to say anything about present worth, but were vague and
generally unintelligible, and we properly held them to
be "clearly erroneous." In Reitler v. Penna. R. R. Co.,
238 Pa. 1, 7, the instructions were to the effect that "the
plaintiff was entitled to recover the amount which he

would likely earn during the remainder of his life." In reversing we said: "The plaintiff was entitled to recover not what he was likely to earn during the remainder of his life but for the loss of earning power during that period," adding, "Then again, these instructions lose sight of the important fact that the loss of future earning power is anticipated in a present sum......;" in other words, the instructions on the measure of damages were erroneous, entirely aside from their inadequacy in failing to instruct on the rule as to present worth. In Burns v. Penna. R. R. Co., 219 Pa. 225, 228, the charge left the jury "at liberty to select as a basis of computation any year, the highest or the lowest, of the earnings of the deceased." After pointing out this clear error and other mistakes in the instructions on the measure of damages, we then call attention to the fact that nothing was said about reducing the damages to their present worth; in short, the case presents another instance of wrongful instructions as well as inadequacy in the charge. Finally, Mack v. Pittsburgh Railways Co., 247 Pa. 598, 604, 605, is still another instance of a material error in the charge, aside from the failure to instruct on the subject of reducing the damages to their present worth; there, after sustaining an assignment going to the first error, we added, as a makeweight, "the charge relative to the measure of damages was also erroneous in not directing the jury that they should find the present worth of future payments which were to be anticipated and capitalized in the verdict." Thus it may be seen that in each of the foregoing cases the reversal was caused by something more than a mere inadequacy in the charge.

In a number of recent cases this court sustained substantial verdicts in favor of plaintiffs where the charge presented precisely the same inadequacy that is now before us. In Irwin v. Penna. R. R. Co., 226 Pa. 156, 157, a widow sued to recover damages for the death of her husband. The trial judge said to the jury: "What you

will award this plaintiff, if you award her anything, is the amount that the deceased would ordinarily have paid for the support and maintenance of his wife and minor children during the balance of his life," merely adding that, in arriving at the verdict, the triers were to take into consideration that the earnings of the decedent, had he lived, would have been paid monthly, whereas their award would be a lump sum which would draw interest from the date of the verdict; nothing was stated more explicit than this on the subject of reducing the ascertained damages to their present worth. In sustaining a verdict for $12,600.00, we said that, while "perhaps not so clearly explicit as desirable," the instructions were "satisfactory to counsel at the time, and if fuller and plainer instructions were desired, they should have been asked for." In Swauger v. Peoples Natural Gas Co., 251 Pa. 287, a verdict for $2,000.00 is sustained; the suit was by six children of a man who was killed through the negligence of the defendant, all of whom were of full age and none dependent on the father. The decedent was 71 years old at the time of his death, and received a salary of $87.50 per month. The strongest instructions on the measure of damages were, "The plaintiffs are entitled to recover a verdict in such amount as would compensate them for the loss they have sustained by being deprived of the income they had reason to expect they would receive from their father during the remainder of his life computed on a basis of what they have received from him during the latter years......," and again, "It is what they lose in dollars and cents by reason of the taking away of the decedent's life they are entitled to recover." Nothing was said about reducing the damages to their present worth, and on appeal it was contended that the trial judge erred "in not directing the jury that they should find the present worth of the probable future contributions of the deceased to the plaintiffs." In overruling this contention, we said: "We are not convinced that the jury did not under-

stand from the whole charge that the plaintiffs were only entitled to recover the present worth of the anticipated gifts......., and the evidence being sufficient to justify the verdict, if based on the present worth of the anticipated pecuniary benefits, we would not be justified in reversing the case on this ground." In Fedorawicz v. Citizens' Electric Illuminating Co., 246 Pa. 141, 144, 147, where there was a verdict for $5,500.00, the action was on behalf of a 7-years-old boy, who was severely "burned on the neck, side of head, legs and back"; the loss of future earnings was considered in the charge, but no instructions were given on the subject of their present worth. We held: "A new trial should not be granted because the judge failed to instruct the jury how they should estimate plaintiff's damages for loss of future earning power, where defendant's counsel presented no point for charge asking for such instructions and made no request for more full instructions upon the point"; but the majority opinion in the present case seeks to distinguish this last decision by saying it rested "on the fact that nothing in the result reached by the jury indicated any departure from the settled rule requiring the capitalization of future earnings." In that case, there was no way of telling with any reasonable degree of certainty just what the injured lad's earning capacity would be, or how long his injuries would last; whereas here the facts from which we can calculate the propriety of the verdict are as fixed and certain as they well could be. The present decedent was only 32 years old, and in good health, at the time of the accident, with an average earning power of $75.00 per month. It would seem fair to figure that the plaintiff and her child might count on $50.00 a month from such earnings for their support during the period of the decedent's expectancy of life: (Emery v. Philadelphia, 208 Pa. 492, 499; Catawissa R. R. Co. v. Armstrong, 52 Pa. 282, 286.) The present worth of such an income, figuring it at $600.00 per year, would be $9,601.50, and, of course,

when taken by the month, it would be at least $9,700.00, the amount of the verdict, or if an annuity of $600.00 per year were to be purchased from a reliable annuity company, it would cost $11,598.00. This being so, it is at least as clear here as in the Fedorawicz case or the Swauger case, supra, that the evidence sustained the verdict rendered; in other words, that the jury did in fact reduce the damages to their present worth in rendering their verdict, and, therefore, that the failure to give explicit instruction so to do was, at the most, harmless error.

The foregoing review of our authorities shows at least three decisions, most of them rendered subsequent to the cases relied upon by the majority, where the point now before us was squarely raised and ruled in favor of the contention of the present appellee, and it shows no case in which the mere failure to instruct that damages must be reduced to their present worth, when no greater mistake appeared, was held to be reversible error. To my mind, in a case like this, where no request for such instructions was presented at trial, where at the end of the charge the court said to counsel: "Do you desire us to call the attention of the jury to anything we may have omitted in our general charge," and where counsel, although making reply to this inquiry, said nothing about the failure to instruct on present worth, and did not take any special exception to the charge on that point, and finally, where the verdict rendered shows that, in point of fact, the jury did reduce the damages to their present worth, the failure to instruct that they must follow this course would be no more than an inadequacy in charge, which would not amount to a misstatement of law. Under such circumstances, the rule is clearly stated in Mastel v. Walker, 246 Pa. 65, 71, where there were no special instructions as to reducing the damages to their present worth, and where, in passing upon other alleged error, we said: "While the instructions on the measure of damages were somewhat scant, and the ade-

quacy of the charge may be justly criticised in that and, possibly, in other respects, yet, it contains no positive misstatements of law, or anything tantamount thereto. At the trial, the appellant made no specific objection to any particular part of the charge; moreover, he neither complained of its inadequacy nor submitted any requests for instructions......upon the measure of damages. ......In Fortney v. Breon, 245 Pa. 47, 56, we recently said, 'Under such circumstances, the rule is that if an instruction is clearly erroneous on the question of damages, it is ground for reversal, no matter whether specific instructions were requested or not, but if the charge be only inadequate, it is the duty of counsel to ask for more definite instructions, and failure to do so will, as a rule, be deemed a waiver of any objection that might otherwise be made, especially where it is obvious that no harm was done by the matter complained of.' " The rule just quoted from Mastel v. Walker, (supra), is well established in our law, and this court has repeatedly held, in both criminal and civil cases, where no special instructions were requested, that, unless it is clear that an omission to charge the jury on a relevant point of law, did in fact work material harm to the appellant, we will not reverse; further, we have said that in such cases there is a presumption in favor of the justice of the verdict which must be overcome by the appellant before we will reverse: Burns v. Sutherland, 7 Pa. 103; Cathcart v. Commonwealth, 37 Pa. 108; Burkholder v. Stahl, 58 Pa. 371; Commonwealth v. Zappe, 153 Pa. 498; Commonwealth v. Peach, 170 Pa. 173; Tucker v. American Car & Foundry Co., 218 Pa. 323; McMeekin v. Pittsburgh Railways Co., 229 Pa. 572; Newingham v. Blair Company, 232 Pa. 511, 517, 518; Reznor Mfg. Co. v. Bessemer & Lake Erie R. R. Co., 233 Pa. 369; Merritt v. Poli, 236 Pa. 170, 174.

I would dismiss all of the assignments of error and affirm the judgment; therefore, I dissent.